## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

WESTWIN ELEMENTS, INC.,

        Plaintiff,

v.                                                            Case No. 5:25-cv-00019-D

CVMR CORPORATION, KAMRAN
KHOZAN, MICHAEL HARGETT,
JOHN FINLEY, and SYDNEY LU,

        Defendants.

-----------------------------------------------------

CVMR CORPORATION and KAMRAN
KHOZAN,

        Counterclaimants and
        Third-Party Plaintiffs,

v.

WESTWIN ELEMENTS, INC.,

        Counter-Defendant,

 - and -

KALEIGH LONG and DMITRI
TEREKHOV,

        Third-Party Defendants.

## CVMR CORPORATION AND KAMRAN KHOZAN'S
## ANSWER, COUNTERCLAIM AND THIRD-PARTY PETITION

In accordance with Rules 8–14 of the Federal Rules of Civil Procedure,

Defendant/Counterclaimant/Third-Party Plaintiff CVMR Corporation ("CVMR") and

Defendant/Counterclaimant/Third-Party Plaintiff Kamran Khozan ("Khozan") submit this Answer, Counterclaim and Third-Party Petition. In further support of their defenses and claims, CVMR and Khozan, state as follows.

## ANSWER

CVMR and Khozan, for their answer and defenses to the Complaint [Doc. 1], filed by Plaintiff, Westwin Elements, Inc. ("Westwin"), on January 6, 2025, state as follows to the corresponding paragraphs in the Complaint. CVMR and Khozan deny each allegation in the Complaint unless expressly admitted in this Answer.

### Response to "SUMMARY"

1.      CVMR and Khozan deny the allegations in the first sentence of Paragraph 1. CVMR and Khozan lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 1. Under Rule 8(b)(5) of the Federal Rules of Civil Procedure, this "has the effect of a denial."

2.      CVMR and Khozan deny the allegations in Paragraph 2, including the allegations in subparagraphs (a) through (j).

3.      CVMR and Khozan deny the allegations in Paragraph 3.

4.      CVMR and Khozan deny the allegations in Paragraph 4.

### Response to "THE PARTIES"

5.      CVMR and Khozan admit that there is a Delaware corporation named "Westwin Elements, Inc." CVMR and Khozan lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 5.

Under Rule 8(b)(5) of the Federal Rules of Civil Procedure, this "has the effect of a denial."

6.      CVMR and Khozan admit the allegations in Paragraph 6.

7.      CVMR and Khozan admit that Khozan is a Canadian citizen. CVMR and Khozan deny the remaining allegations in Paragraph 7.

8.      CVMR and Khozan admit the allegations in Paragraph 8.

9.      CVMR and Khozan deny the allegations in Paragraph 9. CVMR and Khozan deny any implication that Defendant John Finley (or his estate) are a proper parties to this litigation.

10.     CVMR and Khozan admit only that Defendant Sydney Lu is "a Canadian citizen residing in Ontario, Canada." CVMR and Khozan deny any implication that Defendant Sydney Lu is a proper party to this litigation.

## Response to "JURISDICTION AND VENUE"

11.     CVMR and Khozan admit the allegations in Paragraph 11.

12.     CVMR and Khozan admit only that the Court has personal jurisdiction over CVMR, Khozan, and Defendant Michael Hargett. CVMR and Khozan deny the remaining allegations in Paragraph 12, including the allegations that the Court has personal jurisdiction over Defendant John Finley (or his estate) or Defendant Sydney Lu or that CVMR and Khozan engaged in any "harmful conduct."

13.     CVMR and Khozan admit the allegations in Paragraph 13. CVMR and Khozan deny any implication that CVMR and Khozan are liable to Westwin or that Westwin is entitled to any relief from CVMR or Khozan.

14.     CVMR and Khozan admit only that Khozan and Defendant Michael Hargett visited Oklahoma in August 2022 and that only Khozan visited Oklahoma in December 2022.  CVMR and Khozan deny the remaining allegations in Paragraph 14.

15.     CVMR and Khozan deny the allegations in Paragraph 15.

16.     CVMR and Khozan admit only that venue is proper in this Court. CVMR and Khozan lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 16. Under Rule 8(b)(5) of the Federal Rules of Civil Procedure, this "has the effect of a denial."

### Response to "GENERAL FACTS AND ALLEGATIONS SUPPORTING ALL CLAIMS"

17.     CVMR and Khozan lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 17. Under Rule 8(b)(5) of the Federal Rules of Civil Procedure, this "has the effect of a denial."

18.     CVMR and Khozan lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 18. Under Rule 8(b)(5) of the Federal Rules of Civil Procedure, this "has the effect of a denial."

19.     CVMR and Khozan deny the allegations in Paragraph 19.

20.     CVMR and Khozan admit the allegations in Paragraph 20.

21.     CVMR and Khozan deny the allegations in Paragraph 21.

22.     CVMR and Khozan deny the allegations in Paragraph 22.

23.     Paragraph 23 purports to quote from a document, which speaks for itself. CVMR and Khozan deny any allegations in Paragraph 23 that contradict that document. CVMR and Khozan deny the remaining allegations in Paragraph 23.

24.     CVMR and Khozan deny the allegations in Paragraph 24.

25.     CVMR and Khozan deny the allegations in Paragraph 25.

26.     CVMR and Khozan deny the allegations in Paragraph 26.

27.     CVMR and Khozan deny the allegations in Paragraph 27.

28.     CVMR and Khozan deny the allegations in Paragraph 28.

29.     CVMR and Khozan deny the allegations in Paragraph 29.

30.     CVMR and Khozan deny the allegations in Paragraph 30.

31.     CVMR and Khozan deny the allegations in Paragraph 31.

32.     CVMR and Khozan deny the allegations in Paragraph 32.

33.     CVMR and Khozan admit the allegations in Paragraph 33.

34.     CVMR and Khozan deny the allegations in Paragraph 34.

35.     CVMR and Khozan admit that CVMR provided Westwin a "Proposal for a Bankable Feasibility Study," dated October 20, 2022. CVMR and Khozan deny the remaining allegations in Paragraph 35.

36.     Paragraph 36 purports to quote from a document, which speaks for itself. CVMR and Khozan deny any allegations in Paragraph 36 that contradict that document.

37.     CVMR and Khozan admit that Westwin paid Defendant CVMR approximately $3 million. The remaining allegations in Paragraph 37 interpret a

document, which speaks for itself. CVMR and Khozan deny any allegations in Paragraph 37 that contradict that document.

38.    The allegations in Paragraph 38 interpret a document, which speaks for itself. CVMR and Khozan deny any allegations in Paragraph 38 that contradict that document.

39.    The allegations in Paragraph 39 interpret a document, which speaks for itself. CVMR and Khozan deny any allegations in Paragraph 39 that contradict that document.

40.    The allegations in Paragraph 40 interpret a document, which speaks for itself. CVMR and Khozan deny any allegations in Paragraph 40 that contradict that document.

41.    CVMR and Khozan deny the allegations in Paragraph 41.

42.    CVMR and Khozan deny the allegations in Paragraph 42.

43.    CVMR and Khozan deny the allegations in Paragraph 43.

44.    CVMR and Khozan deny the allegations in Paragraph 44.

45.    CVMR and Khozan deny the allegations in Paragraph 45.

46.    CVMR and Khozan admit that Westwin prematurely terminated the Feasibility Study contract in February 2023. CVMR and Khozan deny the remaining allegations in Paragraph 46.

47.    CVMR and Khozan deny the allegations in Paragraph 47.

48.    CVMR and Khozan deny the allegations in Paragraph 48.

**Response to "COUNT I – ACTUAL AND CONSTRUCTIVE FRAUD"**

49.    CVMR and Khozan incorporate all previous statements as if set forth fully herein.

50.    CVMR and Khozan deny the allegations in Paragraph 50.

51.    CVMR and Khozan deny the allegations in Paragraph 51.

52.    CVMR and Khozan deny the allegations in Paragraph 52.

53.    CVMR and Khozan deny the allegations in Paragraph 53.

54.    CVMR and Khozan deny the allegations in Paragraph 54.

55.    CVMR and Khozan deny the allegations in Paragraph 55.

**Response to "COUNT II – BREACH OF CONTRACT"**

56.    CVMR and Khozan incorporate all previous statements as if set forth fully herein.

57.    CVMR and Khozan deny the allegations in Paragraph 57.

58.    CVMR and Khozan deny the allegations in Paragraph 58.

**Response to "COUNT III – BREACH OF FIDUCIARY DUTY"**

59.    CVMR and Khozan incorporate all previous statements as if set forth fully herein.

60.    Paragraph 60 contains legal conclusions, which do not require a response. To the extent that a response is required, CVMR and Khozan deny the allegations in Paragraph 60.

61.    CVMR and Khozan deny the allegations in Paragraph 61.

62.    CVMR and Khozan deny the allegations in Paragraph 62.

## Response to "COUNT IV – UNJUST ENRICHMENT"

63.     CVMR and Khozan incorporate all previous statements as if set forth fully herein.

64.     CVMR and Khozan deny the allegations in Paragraph 64.

65.     CVMR and Khozan deny the allegations in Paragraph 65.

## Response to "COUNT V – MONEY HAD AND RECEIVED"

66.     CVMR and Khozan incorporate all previous statements as if set forth fully herein.

67.     CVMR and Khozan deny the allegations in Paragraph 67.

68.     CVMR and Khozan deny the allegations in Paragraph 68.

## Response to "COUNT VI – CIVIL CONSPIRACY LIABILITY"

69.     CVMR and Khozan incorporate all previous statements as if set forth fully herein.

70.     CVMR and Khozan deny the allegations in Paragraph 70.

71.     CVMR and Khozan deny the allegations in Paragraph 71.

## Response to "JURY DEMAND"

72.     CVMR and Khozan admit only that Westwin has demanded a jury trial. CVMR and Khozan deny any implication that CVMR and Khozan are liable to Westwin or that Westwin is entitled to any relief from CVMR and Khozan.

## <u>Response to "RELIEF REQUESTED"</u>

With respect to Westwin's prayer for relief, CVMR and Khozan deny that Westwin is entitled to any relief requested in subsections one through six of Westwin's prayer (or any other relief whatsoever) and further responds as follows:

1.     CVMR and Khozan deny that Westwin is entitled to the requested relief in this subparagraph.

2.     CVMR and Khozan deny that Westwin is entitled to the requested relief in this subparagraph.

3.     CVMR and Khozan deny that Westwin is entitled to the requested relief in this subparagraph.

4.     CVMR and Khozan deny that Westwin is entitled to the requested relief in this subparagraph.

5.     CVMR and Khozan deny that Westwin is entitled to the requested relief in this subparagraph.

6.     CVMR and Khozan deny that Westwin is entitled to the requested relief in this subparagraph.

## <u>DEFENSES</u>

CVMR and Khozan assert the following additional defenses without assuming any burdens of production, persuasion, or proof that, pursuant to law, are not legally assigned to CVMR and Khozan and are Westwin's burden to prove.

1.     Westwin has failed to state one or more claims upon which relief can be granted.

2.      Westwin's claims are barred by the doctrine of unclean hands.

3.      Westwin's claims are barred by the doctrine of estoppel.

4.      Westwin cannot recover against CVMR and Khozan for any actions engaged in by any of CVMR's and Khozan's employees, agents, or representatives, that were outside the scope of their employment or proper authority.

5.      CVMR and Khozan aver that neither they, nor any of their officers, directors, employees, or representatives, acted in bad faith.

6.      Although this Answer is <u>not</u> submitted by Defendant John Finley, CVMR and Khozan submit that Defendant John Finley predeceased the filing of the Complaint and none of the claims asserted against him survive his death.

7.      Although this Answer is <u>not</u> submitted by Defendant Sydney Lu, CVMR and Khozan submit that this Court does not have personal jurisdiction over Defendant Sydney Lu, as she did not conduct activities in Oklahoma sufficient to constitute minimum contacts.

8.      Westwin is not entitled to punitive damages, and punitive damages are not available against CVMR and Khozan.

9.      Any benefit retained by CVMR and Khozan from Westwin is not unjust.

10.     Westwin cannot recover monies due under any contract that lacks considerations and/or lacks mutual obligation.

11.     Westwin cannot recover monies due under any contract that is not valid and enforceable.

12.    Westwin did not provide CVMR and Khozan adequate and/or sufficient services under the contract it is seeking to enforce, so it cannot recover.

13.    Westwin cannot recover under the terms of the contract because Westwin materially breached.

14.    If Westwin prevails on a breach of contract claim, Westwin cannot prevail under an unjust enrichment claim on the same basis.

15.    Westwin cannot recover any monies owed under any contract for which there was no meeting of the minds with respect to all of the terms of the contracts Westwin alleges exist.

16.    Westwin cannot recover any monies owed under any contract executed under false pretenses or fraud.

17.    CVMR and Khozan will assert additional defenses as may be appropriate based on continuing investigation and discovery.

## COUNTERCLAIM AND THIRD-PARTY PETITION

Counterclaimant/Third-Party Plaintiff CVMR Corporation ("CVMR") and Counterclaimant/Third-Party Plaintiff Kamran Khozan ("Khozan"), for their claims for relief against Counter-Defendant, Westwin Elements, Inc. ("Westwin"), and Third-Party Defendants KaLeigh Long ("Long") and Dmitri Terekhov ("Terekhov"), hereby allege and state as follows.

## Parties, Jurisdiction & Venue

1.    Counterclaimant/Third-Party Petitioner CVMR is a Canadian Corporation with its principal place of business in Toronto, Ontario, Canada.

2.      Counterclaimant/Third-Party Petitioner Khozan is a Canadian citizen who is domiciled in Ontario, Canada.

3.      As alleged in the Complaint [Doc. 1] filed in this action, Counter-Defendant Westwin is a Delaware corporation with its principal place of business in Oklahoma City, Oklahoma.

4.      Upon information and belief, Third-Party Defendant KaLeigh Long is an individual domiciled in Oklahoma City, Oklahoma.

5.      Upon information and belief, Third-Party Defendant Terekhov is an individual domiciled in Ontario, Canada.

## Background

6.      In 1986, Khozan founded CVMR, a metal refinery technology provider. CVMR is also engaged in the business of mining and refining mineral resources in at least 18 countries.

7.      For almost 40 years, CVMR has refined metals using proprietary processes that are environmentally neutral.

8.      CVMR's proprietary technologies enable it to refine metals directly from laterite or sulfide ore concentrates, tailings, scrap metals, and even radioactively contaminated metals. CVMR uses these refined metals to manufacture metal powders, including nano-powders, coatings, and net shapes of various kinds. CVMR has extensive experience working with 36 different metals, including nickel, iron, and cobalt.

9.     Relevant to this action, among other patents, CVMR maintains the following patents:

    a.     Processes for Recovering Metals from Black Mass, US-20240344175-A1;

    b.     Processes for Treating Scrap Metal Material, US-20220154309-A1;

    c.     Apparatus and Process for Making High Purity Nickel, US 8,852,315 B2;

    d.     Processes for Recovering Metallic Iron from Source Material, WO/2024/103148; and

    e.     Process for Recovering Metals, and Process for Recovering Metals from Silicate Materials, WO/2013/110183.

10.     Relevant to this action, CVMR maintains trade secrets related to the design and calibrations of the equipment used in the processing and refining of minerals, as well as trade-secret know-how required to operate the equipment. The result is cost-effective and environmentally neutral, distinguishing CVMR from its competitors.

11.     CVMR takes great lengths to protect its trade secrets and intellectual property. For example, CVMR includes confidentiality and nondisclosure covenants in its employment agreements and limits the access to and use of its unpatented, trade-secret processes used in its refining projects and its technical expertise, research data, and other confidential information. In its transactions, CVMR also enters into mutual confidentiality and non-disclosure agreements with its business partners. Additionally, CVMR keeps its trade secrets behind locked doors, digitally password-protects and

encrypts its data, and intentionally limits access to only those individuals who have signed confidentiality and nondisclosure agreements. CVMR's trade secrets are not known outside of CVMR.

12.    In March 2022, Brian McCollow, a former director and shareholder of Westwin, suggested to Khozan that he be introduced to and meet with Long.

13.    In April 2022, Khozan and Long first spoke via telephone. During the call, Long described herself as a Republican pollster whose company generated approximately $14,000 in monthly revenue. Long also touted her personal relationships within the highest levels of Republican political circles.

14.    On the call, Long also touted her connections to the Democratic Republic of the Congo ("DRC")—one of the world's largest and most significant sources of cobalt. In particular, Long represented to Khozan that she had a personal relationship with DRC President, Félix-Antoine Tshisekedi Tshilombo, who had promised her unlimited access to the DRC's cobalt. Long also represented that she had a personal passion and mission to help the people of the DRC.

15.    During the call, Long also represented to Khozan that she had secured $126 million from XM Bank to fund Counter-Defendant Westwin, an entity she intended to create for purposes of building the first cobalt refinery in the United States. Long further represented to Khozan that she had acquired a site for the proposed plant and that she just needed CVMR's technology to make Westwin a reality.

16.    Unfortunately, CVMR and Khozan would later discover that Long intentionally and materially misrepresented her connections in the DRC and the $126

million in financing from XM Bank. (In fact, during an unrelated visit to the DRC in December 2023, Khozan asked President Tshilombo about his relationship with Long and his promises of access to cobalt. At that time, President Tshilombo told Khozan that he did not recall meeting Long. With respect to Long's claims of unlimited access to cobalt, President Tshilombo asked Khozan rhetorically, "Why would I make such a stupid promise?" To CVMR and Khozan's knowledge, the DRC no longer has any connection to Westwin's enterprise, if it ever did.)

17.     After their initial call, on April 23, 2022, Long emailed Khozan to ask whether Westwin could obtain a "First Right of Refusal to build and operate the first 10 of CVMR's refinery modules for the purposes of refining Cobalt in the U.S." on the "condition that Westwin Elements, Inc. fund[ed] the first module deposit no later than October 31, 2022."

18.     On April 24, 2022, Khozan agreed, confirming to Long that "CVMR Corporation of Canada is hereby granting Westwin Elements, Inc. the First Right of Refusal to build and operate 10 cobalt refining modules in the United States based on CVMR's proprietary cobalt refining system, under the condition that Westwin Elements, Inc. funds the first module no later than October 31, 2022."

19.     That same day, Long responded, thanking Khozan and stating that she "hope[d] to have movement on the deposit soon." But, Westwin never satisfied this condition precedent and never funded any of the cobalt refining modules.

20.     On April 30, 2022, Long followed up with Khozan in an email, stating, "Brian [McCollow] and [she] want[ed] to ensure [their] partnership [was] structured on

a strong foundation." Long further stated that she and Mr. McCollow "anticipate[d] [Khozan] [would] be able to join [them] as a shareholder, builder, operator, and full partner to the business, which [they would] undoubtedly reciprocate."

21.    In exchange for CVMR's assistance, Long offered CVMR and Khozan a 33% stake in Westwin.

22.    On May 1, 2022, Khozan responded to Long with a proposed Agreement "Re: Proposed Cobalt Refinery in the State of Oklahoma."

23.    The terms of this agreement provided the following:

    a.    CVMR would "design and construct the Refinery on behalf of Westwin having capacity of 10,000 tpa of refined product for an estimated cost to Westwin of approximately US$150 million on the terms and conditions of a construction agreement to be entered to between CVMR and Westwin."

    b.    "The Refinery [would] be constructed on the Site in facilities to be provided by Westwin as specified by CVMR."

    c.    "CVMR [would] grant to Westwin the right and license to use CVMR's proprietary technology and all subsequent revisions and enhancements related to the refining of cobalt and related elements for a period of 30 years in consideration of which Westwin [would] grant to CVMR a 35% carried full equity interest in Westwin [which] interest shall not be subject to dilution."

    d.    "Upon completion of construction and commissioning of the Refinery, the Refinery will be operated by CVMR on behalf of Westwin on the terms and conditions of an operating agreement between CVMR and Westwin for a period of 30 years."

24.    On May 3, 2022, Long and Mr. McCollow executed the agreement on behalf of Westwin, which they returned to Khozan on May 5, 2022. On May 6, 2022,

Khozan countersigned and returned the fully executed agreement to Long and Mr. McCollow.

25.    On May 23, 2022, Long emailed Khozan, stating that Westwin was "in discussions with a few investors on fully funding our [i.e., Westwin's] cap ex / op ex for 3 modules."

26.    On June 21, 2022, Long informed Khozan by phone call that she had purportedly secured an investment for $10 million from Randy Prude, an individual on Westwin's Board of Directors.

27.    On August 2, 2022, Long emailed Khozan to thank him "for making progress possible," and stated that Westwin had "won funding from Lawton based on the following projections: 2,335 Jobs Created, 324 Million Capital Deployment to Purchase 6 Reactors."

28.    Long further represented in this email that Lawton-Fort Sill had committed "$9.32 million Up Front Cash and $12 million in Land," that her "bank said they would loan [her] 80% of the land value," and that "we [i.e., Westwin] are counting on $18.92 million upfront cash."

29.    Upon information and belief, these representations—among many others concerning Long's progress in obtaining investors—were false.

30.    On or about August 23, 2022, Long invited Khozan to visit Oklahoma City to meet with the City of Lawton, Governor Kevin Stitt, and potential investors.

31.    From August 29, 2022, to August 31, 2022, Khozan visited Oklahoma at CVMR and Khozan's expense. During this visit, for the first time, Long asked CVMR

to produce a feasibility study to assist Long's capital raising efforts. (In refinery engineering, a feasibility study is a comprehensive assessment and analysis of the viability of a proposed project or venture.)

32.    On or about September 19, 2022, Khozan sent to Long a template proposal for the feasibility study for the proposed cobalt refinery.

33.    On September 29, 2022, Long sent Westwin's purported term sheet and projections to Khozan. Upon information and belief, these representations—among others regarding Westwin's projected profitability—were false.

34.    On October 15, 2022, Long notified Khozan that Mr. Prude, who was "worth about 23 million," would "deliver his 10 million dollar pledge to Westwin" but first "want[ed] to make sure that the feasibility study [would] be completed in a way that will make us [i.e., Westwin] eligible to complete our funding round with C-PACE, DOE, USDA Grants, EXIM etc. … ." Presumably for these reasons, Long asked Khozan for an itemized breakdown of costs and deliverables associated with the feasibility study.

35.    The same day, to provide additional assurances, Khozan invited members of Westwin's Board of Directors to visit CVMR's Toronto test facility. On or about October 16, 2022, Westwin's Board of Directors visited the facility.

36.    On October 20, 2022, CVMR provided Long a "Proposal for a Bankable Feasibility Study" (the "Proposal"). (A "bankable feasibility study" is a feasibility study with sufficient detail of a project's viability to attract investment and financing from investors or lending institutions.)

37.    The Proposal estimated the cost for the tests, piloting, and drafting of the feasibility study—including marketing analysis and discounted cash flow projections—to be $5 million.

38.    The proposed timeline for the feasibility study was six months. But, because the feasibility study would likely need to be audited by an "external, internationally reputable engineering firm," the Proposal allowed for an additional two months for this audit.

39.    CVMR's proposed methodology for conducting the feasibility study involved six pilot campaigns, each of which would collect engineering data for constructing a full-scale "Cobalt Carbonyl Refining Plant." Each campaign would take approximately 16 days and would include the following: a start-up meeting, five days for preparation, a pilot plan test run for five days/24 hours, product testing and assays, equipment material testing, post-campaign debrief and analysis, and a progress report.

40.    Each campaign progress report would then be submitted to Westwin for evaluation, along with samples of purified cobalt powder from the pilot process for evaluation and market development activities.

41.    Under the terms of the agreement, in addition to the pilot campaign reports, CVMR would submit monthly reports to Westwin. The monthly reporting requirements included "Original vs. updated Gantt Chart, incorporating the proposed deviations and approved changes for discussion and approval; Tabulated targets/goals, actions, and results for the month's activities; Deviations, with justifications, to the

approved work plans and schedules, for further approval; and Goals, activities and expected outputs for the next work-month."

42.    The payment terms contained in the Feasibility Study Agreement included an initial payment of $3,000,000 due upon the execution of the agreement.

43.    On or about October 25, 2022, Khozan emailed Long a copy of the draft Feasibility Study Agreement and explained that he was "working on the details [Long's] investors require with regard to the Feasibility and Scoping Study."

44.    On October 25, 2022, Victor Emmanuel, then Chief Operating Officer of CVMR, met with Joanna Miller, Westwin's former Vice President of Sales.

45.    Ms. Miller wrote to Mr. Emmanuel stating a potential future Westwin client, 6K, required a Certificate of Analysis ("COA") before 6K could test Westwin's cobalt nitrate salt samples. She asked Mr. Emmanuel which person at CVMR could assist in drafting the COA in order for 6K to begin testing. Mr. Emmanuel responded the following day and said he would provide the information to her.

46.    On October 26, 2022, Long emailed Khozan asking for an estimated cost of electricity for one reactor. In the email, Long stated that she "kn[ew] [the] feasibility study [would] nail down these numbers, but [she was] trying to give ballpark estimates to those asking."

47.    The next day, Khozan responded that "[t]he way we do it for a 10,000 tpa is [that] we request a 10 Megawatt of 'installed' capacity, but use just under 50% of that capacity."

48.     On October 27, 2022, Long again emailed Khozan.  This time, she stated "ABT Company wants a RFP for the type of black mass we want … they [i.e., ABT Company] are requesting an RFP to give us a solid quote on quantities."

49.     On October 27, 2022, Khozan sent to Long the cost breakdown of the feasibility study.

50.     The cost breakdown of the $5 million for the feasibility study reflected the following itemized costs:

      a.  Auxiliary Equipment procurement;

      b.  Bench Scale/TGA Tests works;

      c.  Consumables;

      d.  Interim Report #1;

      e.  Installation/Commissioning;

      f.  Six Feasibility Study Pilot Campaigns;

      g.  Interim Report #2;

      h.  Engineering deliverables;

      i.  Project management; and

      j.  Product development/preliminary marketing.

51.     For their part, CVMR and Khozan contributed to the project's funding efforts by reaching out to their own international contacts to gauge interest. On November 5, 2022, Khozan wrote to Long to inquire whether she had considered approaching the State of Oklahoma to issue bonds on behalf of the project. He additionally stated that he received approval from the Turkish government to assist

Westwin and CVMR in the DRC, but that the Turkish government expected consideration for their participation.

52.    Long responded that Westwin was "working with two bond groups right now" and that "both ha[d] indicated they will fully fund [Westwin], but [Westwin is] still amid the paperwork process with them [i.e., the 'bond groups']." Upon information and belief, Long's representations regarding these interested and committed investors were false.

53.    On November 23, 2022, Long emailed Mr. Emmanuel and Defendant Michael Hargett to introduce them to Dr. Al Gonzalez. In her email, Long stated that Dr. Gonzalez and "his company will be intimately involved in our [i.e., Westwin's] project." Long further stated that Dr. Gonzalez and his company were "quickly trying to complete our C-PACE application for 70 million in government funding." (C-PACE is a state-enabled financing program that allows commercial property owners to access low-cost, long-term financing for projects that improve energy efficiency, water conservation, and renewable energy systems.)

54.    That same day, Long also wrote to Khozan with a proposed timeline that contemplated the commencement of the feasibility study with cobalt hydroxide "with Locked in 5 Year Supplier (Preferably Not Glencore/ We Have Other Options)" on December 1, 2022. The timeline also contemplated that blueprints and plans for construction, permit applications, and material suppliers would be completed by February 1, 2023, and that the feasibility study would be completed by April 1, 2023.

55.    Also that day, Long and Khozan spoke by phone to discuss the challenges that Long continued to face with respect to sourcing cobalt.

56.    On November 24, 2022 (i.e., the next day), Khozan emailed Long, stating that CVMR had "analyzed the dilemma of Westwin trying to secure sources of reliable feed material (cobalt)" and that he thought that CVMR had "a solution along the line of what Kaleigh [Long] was proposing."

57.    The same day, Long emailed that she had "a large capital group wanting to know logistics on our shipping plan for feedstock.  It's looking like three of our main suppliers will likely be: Glencore, Somika, USM." Upon information and belief, Long's representations regarding her progress procuring cobalt suppliers were false.

58.    On November 25, 2022 (i.e., the following day), Long wrote to Khozan, stating that she had "several Universities that want to fund us [i.e., Westwin]" and that the universities "[were] waiting for a proposal on Vapor Met departments/R&D, and a price tag on this." Long asked Khozan if CVMR could supply such a proposal.

59.    On November 26, 2022 (i.e., the next day), Long wrote to Khozan and others representing that the Director General of the DRC, the DRC President's "highest representative of mining/refining partnerships," was going to visit Oklahoma to discuss the Lawton plant and that the Director General of the DRC was interested in meeting with representatives of CVMR, Westwin, and the Oklahoma Department of Commerce.

60.    Long and Khozan agreed to meet in Oklahoma around November 30, 2022, to visit with the representative from the DRC.

61.    On November 30, 2022, at CVMR's expense, Khozan traveled to Oklahoma as planned. But, the representative from the DRC did not. Because of this, Khozan asked if Long was available for lunch because, "if no one was showing up from Congo, [he'd] rather catch up with [his] staff on Friday in NYC and give them a hand in their negotiation" between CVMR and Tanzer Seda of Laman Madencilik TIC Ltd. and Goldenberg Madencilik A.S. for mineral supplies.

62.    On December 22, 2022, Long emailed Khozan, forwarding an email reflecting a purported meeting between Westwin and representatives from the DRC at the Waldorf Astoria Hotel in Washington DC that took place on December 15, 2022. Other than Long's email, CVMR and Khozan have no evidence supporting that this meeting actually occurred.

63.    On January 5, 2023, Khozan wrote to Long to tell her that CVMR "intend[ed] to start the Feasibility Study tomorrow morning [i.e., January 6, 2023]." Khozan also asked Long, if she was "sure [she] want[ed] to go through with it [i.e., the feasibility study]." Because he continued to question Westwin's funding and ability to source cobalt, Khozan also offered Long the opportunity to withdraw from the Feasibility Study Agreement. In particular, Khozan stated that he "kn[ew] [Westwin and CVMR] ha[d] signed the agreement, but [Westwin and CVMR] can cancel it if [Long] so desire[d]." But, Khozan also reiterated that "as of tomorrow things become formal" and that he "thought [he would give Westwin] a chance … to back out of it [i.e., the Feasibility Study Agreement]."  Khozan also emphasized that "[o]therwise,

[CVMR is] ready and ha[s] ordered all the material which [CVMR] will need for the tests."

64.     Long replied that she "absolutely want[ed] to go forward with it [i.e., the feasibility study]. Absolutely. Thank you."

65.     On or about January 6, 2023, Khozan confirmed that the sum of $2,999,982.50 was deposited by Westwin into CVMR's accounts.

66.     Nevertheless, despite that Long had "absolutely want[ed] to go forward" with the feasibility study, Westwin continued to be unable to source cobalt for the project.

67.     Because of Westwin's ongoing challenges sourcing cobalt, Khozan invited Long to travel with him to the Middle East so he could introduce her to his nickel suppliers and partners in Turkey, Dubai, and Abu Dhabi.

68.     At CVMR's expense, Khozan purchased for Long airfare, lodging, and transportation for a trip to Turkey, Dubai, and Abu Dhabi to meet CVMR and Khozan's nickel contacts.

69.     On January 17, 2023, Khozan sent to Long a CVMR template Off-Take Agreement and asked that Westwin's General Counsel adapt the agreement to Westwin's specifications for the purchase of cobalt salts, nickel concentrate, and cobalt concentrate. Khozan also stated that "[t]his [was] an essential element that has to be included in your cash flow projection and the Feasibility Study."

70.     On January 25, 2023, Khozan emailed Long to encourage her to update Westin's publicly available online presence before the trip to the Middle East, in order

to provide confidence to potential investors. Khozan informed Long that, for example, Crunchbase.com showed total funding for Westwin to be $100,000 with one employee. Long responded that the information was incorrect, and she represented that Westin had raised "about [$]16.6 million"—far less than the levels of investment that she had previously represented to Khozan.

71.    Khozan encouraged Long to include the value of CVMR's technology and licenses to be $150 million.

72.    On January 25, 2023, Long wrote to Khozan asking that CVMR "[p]lease include Nickel in our F.S. [i.e., feasibility study]."

73.    On or about January 31, 2023, CVMR and Westwin signed the amended agreement to include nickel.

74.    In February 2023, Khozan and Long traveled to the Middle East for the meetings that Khozan had organized for Westwin and Long's benefit. These meetings included an introduction to Tanzer Seda of Laman Madencilik TIC Ltd. and Goldenberg Madencilik A.S. (both mining companies with operations in Turkey) and an introduction to Meta Nickel (a mining company with operations in Turkey). These companies are now former business partners of CVMR.

75.    In Abu Dhabi, Khozan also introduced Long to management of the Royal Group and members of one of the ruling families of the United Arab Emirates. But, for unknown reasons and without Khozan's knowledge, Long attempted to secretly record this meeting without the parties' consent. Embarrassingly, Long forgot the recording device in the meeting room, and the device was found. Upon discovering that Long had

attempted to secretly record the meeting, the Royal Group expressed significant disappointment in Khozan for his association with Long. Moreover, Long's bizarre and outrageous conduct has substantially harmed Khozan's business relationship with the Royal Group and the family.

76.    In Dubai, Long introduced Khozan to some of her contacts. One of these contacts was an American man working in Bulgarian construction whom Long introduced as her personal security and a member of the U.S. Secret Service.

77.    Long also attempted to force a meeting between Khozan and a Bulgarian individual named Vasili Krumov Bozkhov (i.e., Long's "friend from Dubai"). According to Long, Mr. Bozkhov had promised Long an investment of $200 million if Khozan could convince him that Westwin was a good investment. After researching Mr. Bozkhov, Khozan refused to meet with him in person.

78.    Instead, Khozan reluctantly agreed to meet with Mr. Bozkhov over Zoom. On that call, Mr. Bozkhov represented that he would invest in Westwin if Khozan could convince the United States government to lift sanctions levied against him.

79.    In this same timeframe, Khozan also learned that Long did not have $126 million secured from XM Bank.  In fact, the only investor at that time was Randy Prude. According to Long, Mr. Prude had initially promised Westwin $10 million, which was later reduced to $5 million, and ultimately to around $3 million.  Upon information and belief, Mr. Prude made such an investment based on two visits to CVMR's Toronto facility. It was also around this this time that Khozan learned that Long and Westwin

were unable to afford the purchase of cobalt feedstock in quantities required for the feasibility study and to operate a refinery business.

80.    Also around this time, Khozan learned that Long had overstated her connections to the DRC and access to source materials and that Long was incapable of accessing cobalt feedstock in quantities required for the feasibility study and to operate a refinery business.

81.    On February 14, 2023, while still in Dubai, Long disrupted a dinner meeting between Khozan and his business and personal contacts (to which Long was not invited) and verbally cancelled CVMR and Westwin's agreement. Upon information and belief, Long intended to embarrass Khozan and damage his relationship with these colleagues.

82.    The following day, Khozan met with other friends and acquaintances at a restaurant for lunch. Long again interrupted the meeting, making a scene in front of Khozan's friends and acquaintances.

83.    Upon information and belief, Long intended to disrupt these meetings between Khozan and his colleagues and business partners in a manner that would damage Khozan's reputation and relationships.

84.    On February 22, 2023, Long delivered to Khozan a "Dissolution Letter" drafted by Westwin's former General Counsel Katrina Lucas. The letter was backdated to January 21, 2022, and purported to terminate both the Technology License and Joint Venture Agreement, and the Feasibility Study Agreement.

85.    Since the ostensible termination of CVMR and Westwin's relationship, Westwin and Long have engaged in a campaign to recruit CVMR's employees with the know how needed to use CVMR's trade secrets, confidential information, and patented processes.

86.    In particular, since the breakdown of the relationship between CVMR and Westwin, Westin and Long have solicited the following current or former CVMR employees for the purpose of misappropriating CVMR's intellectual property:

    a.    Third-Party Defendant Dmitri Terekhov, former CVMR Executive Vice President, Board Member, and shareholder and current Westwin Chief Technical Officer;

    b.    Rodney Reynolds, a former CVMR employee and current Westwin Lead Carbonyl Technology;

    c.    Mehmet Bozdemir, Manager of CVMR Turkey; and

    d.    Victor Emmanuel, CVMR Board Member and former CVMR COO.

87.    Additionally, since the breakdown of the relationship between CVMR and Westwin, Westwin and Long have interfered with the CVMR's and Khozan's relationships with the following suppliers, investors, and funders to the detriment of CVMR:

    a.    Laman Madencilik TIC Ltd.;

    b.    Goldenberg Madencilik A.S.; and

    c.    Royal Group Holdings LLC of Abu Dhabi.

88.     Westwin and Long are inexperienced, unsophisticated, and unqualified to safely perform the chemical processes involved in Westwin's enterprise, unduly placing CVMR's reputation and intellectual property at risk.

89.     On January 6, 2025, Westwin filed its Complaint. Since that time, Westwin and Long have abused the litigation process to publish defamatory statements concerning CVMR, Khozan, Defendant Michael Hargett, Defendant John Finley, and Defendant Sydney Lu. Westwin and Long have provided the Complaint and related news publications to CVMR's investors and suppliers in an unlawful attempt to disrupt CVMR's business relationships.

**First Theory of Recovery**
**Actual and Constructive Fraud,**
**Fraud in the Inducement, and Negligent Misrepresentation**
**(Against Westwin and Long)**

90.     CVMR and Khozan hereby reallege and incorporate by reference all preceding paragraphs as if fully alleged in this paragraph.

91.     Westwin and Long made numerous intentional and material misrepresentations to CVMR and Khozan including Westwin and Long's access to cobalt, Westwin's level of investment and funding, and Westwin and Long's intention to enter into a long-term business venture with CVMR.

92.     Westwin and Long made these misrepresentations knowing they were false or recklessly disregarding whether they were true.

93.     Westwin and Long intended for CVMR and Khozan to rely on these misrepresentations.

94.    CVMR and Khozan relied on Westwin and Long's misrepresentations to their detriment by entering into the agreements described above and by providing Westwin and Long access to CVMR's employees, know how, technology, and business contacts.

95.    As a result of Westwin's and Long's intentional misrepresentations, CVMR and Khozan have suffered damages in an amount to be proven at trial.

96.    Westwin and Long's fraudulent misrepresentations were done with reckless disregard for the rights and reputation of CVMR and Khozan, or intentionally and with malice toward CVMR and Khozan, and warrant the imposition of punitive damages.

**Second Theory of Recovery**
**Breach of Contract**
**(Against Westwin)**

97.    CVMR hereby realleges and incorporates by reference all preceding paragraphs as if fully alleged in this paragraph.

98.    CVMR performed its contractual obligations under the Technology Agreement and Joint Venture Agreement because, at all times, CVMR held the right to grant the rights and licenses of the relevant patents and technology to Westwin.

99.    Westwin intentionally breached the Technology License and Joint Venture Agreement by unilaterally terminating the contract when the contract provided them no right to do so and breached the Effect of Termination clause under the Technology License and Joint Venture Agreement by continuing to use CVMR's Intellectual Property after the termination of the contract. Westwin also intentionally

breached and failed to perform its contractual obligations under the Feasibility Study
Agreement by unilaterally canceling the contract without providing the necessary prior
written notice and required time to cure, and by breaching the Confidentiality clause
under the Feasibility Study Agreement, because Westwin continued to and continues
to use CVMR's Intellectual Property following the termination of the contract.

100. As a result of Westwin's breaches, CVMR has been damaged in an
amount in excess of $75,000, which will be proven at trial.

**Third Theory of Recovery**
**Tortious Interference with Contract**
**(Against Westwin and Long)**

101. CVMR hereby realleges and incorporates by reference all preceding
paragraphs as if fully alleged in this paragraph.

102. Through CVMR and Khozan's introductions, Westwin and Long were
aware of the contractual relationship between CVMR and Laman Madencilik TIC Ltd.
and Goldenberg Madencilik A.S.

103. Upon information and belief, Westin and Long intentionally influenced
CVMR's suppliers—with whom CVMR had contractual relationships—to cease doing
business with CVMR.

104. Upon information and belief, Westwin and Long intentionally damaged
CVMR's contractual relationships with Laman Madencilik TIC Ltd. and Goldenberg
Madencilik A.S. in January 2025 by spreading malicious rumors known to be false to
prevent potential partners from contracting with CVMR.

105.    Westwin and Long's interference in CVMR's contracts was neither justified, privileged, nor excusable.

106.    As a result of Westwin and Long's interference, CVMR has been damaged in an amount in excess of $75,000, which will be proven at trial.

107.    Westwin and Long acted intentionally, maliciously, recklessly, or without regard to the rights of others, entitling CVMR to punitive damages.

**Fourth Theory of Recovery**
**Tortious Interference with Prospective Economic Advantage**
**(Against Westwin and Long)**

108.    CVMR and Khozan hereby reallege and incorporate by reference all preceding paragraphs as if fully alleged in this paragraph.

109.    CVMR and Khozan had business relationships and expectancies with Laman Madencilik TIC Ltd. and Goldenberg Madencilik A.S. for the purchase of metal supply to use in refining.

110.    CVMR and Khozan has had a business relationship and expectancy with Royal Group Holding LLC.

111.    Through discussions with Khozan, introductions by Khozan, and meetings with Khozan and Laman Madencilik TIC Ltd., Goldenberg Madencilik A.S., and the Royal Group, Westwin and Long were aware of CVMR's business relationships and expectancies with Laman Madencilik TIC Ltd., Goldenberg Madencilik A.S., and the Royal Group.

112.    Before and after the unilateral termination of Westwin's contracts with CVMR, Long and Westwin intentionally interfered with CVMR and Khozan's

relationships and expectancies with Laman Madencilik TIC Ltd., Goldenberg Madencilik A.S., and the Royal Group.

113. Such interference was unfair, unlawful, or by lawful means without justification.

114. As a result of Westwin and Long's interference, CVMR and Khozan's relationships and expectancies with Laman Madencilik TIC Ltd., Goldenberg Madencilik A.S., and the Royal Group were disrupted, causing damages in excess of $75,000, which will be proven at trial.

115. Westwin and Long acted intentionally, maliciously, recklessly, or without regard to the rights of others, entitling CVMR and Khozan to punitive damages.

**Fifth Theory of Recovery**
**Abuse of Process**
**(Against Westwin and Long)**

116. CVMR hereby realleges and incorporates by reference all preceding paragraphs as if fully alleged in this paragraph.

117. Westwin and Long brought their Complaint for the improper purpose of publishing false and defamatory allegations concerning CVMR and Khozan.

118. Westwin and Long provided the Complaint to CVMR and Khozan's business partners and industries contacts for the purposes of disrupting CVMR's business and harming CVMR's and Khozan's reputations.

119. As a result of Westwin and Long's actions, CVMR and Khozan have been damages in excess of $75,000, which will be proven at trial.

120.    Westwin and Long acted intentionally, maliciously, recklessly, or without regard to the rights of others, entitling CVMR and Khozan to punitive damages.

**Sixth Theory of Recovery**
**Oklahoma Uniform Trade Secrets Act, 78 O.S. §§ 85 *et seq.***
**(Against Westwin and All Third-Party Defendants)**

121.    CVMR hereby realleges and incorporates by reference all preceding paragraphs as if fully alleged in this paragraph.

122.    In the provision of its environmentally friendly metal refining processes, CVMR developed certain trade secrets, including technical processes and know-how, business plans, pricing data, supplier lists and data, customer lists and data, and employee lists.

123.    CVMR took reasonable measures to limit access to this intellectual property by, among other things, including confidentiality and nondisclosure covenants in its employment agreements; limiting the access to and use of its unpatented, trade-secret processes used in its refining projects and its technical expertise research data, and other confidential information; entering into mutual confidentiality and non-disclosure agreements with its business partners; physically securing its tangible information; password-protecting and encrypting its data; and intentionally limiting access to only those individuals who have signed confidentiality and nondisclosure agreements.

124.    CVMR and Westwin also entered into the Technology License and Joint Venture Agreement with Westwin which defines CVMR's Intellectual Property as including but not limited to patented technology, trade secrets, technical expertise,

research data, and other confidential information. This Technology License and Joint Venture Agreement granted Westwin a limited right to access and use CVMR's Intellectual Property for specific purposes.

125.    Such information possesses independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

126.    Westwin and the Third-Party Defendants misappropriated such information through the improper means of continued use of CVMR's Intellectual Property after the Technology License and Joint Venture Agreement was unilaterally cancelled by Westwin and Long.

127.    Terekhov also misappropriated such information through the breach of his settlement agreement with CVMR, which obligates him to maintain CVMR's trade secrets and confidential business information in confidence.

128.    Terekhov also misappropriated CVMR's trade secrets and confidential business information through his breach of the confidentiality clause within his employment agreement.

129.    Westwin and the Third-Party Defendants also misappropriated CVMR's good will by passing off CVMR's intellectual property as their own, and using CVMR's reputation in the industry to gain an economic advantage by potentially confusing investors, suppliers, and customers as to the nature of their relationship.

130.   As a result of Westwin and the Third-Party Defendants' conduct, CVMR has been damaged and continues to be damaged in an amount in excess of $75,000 which will be proven at trial.

131.   Westwin and the Third-Party Defendants acted willfully and maliciously, entitling CVMR to royalties, attorney's fees and exemplary damages.

**Seventh Theory of Recovery**
**Defend Trade Secrets Act, 18 U.S.C. §§ 1836 *et seq.***
**(Against Westwin and All Third-Party Defendants)**

132.   CVMR hereby realleges and incorporates by reference all preceding paragraphs as if fully alleged in this paragraph.

133.   In the provision of its environmentally friendly metal refining processes, CVMR developed certain trade secrets, including technical processes and know-how, business plans, pricing data, supplier lists and data, customer lists and data, and employee lists.

134.   CVMR took reasonable measures to limit access to this intellectual property by, among other things, entering into the Technology License and Joint Venture Agreement with Westwin which defines CVMR's Intellectual Property as including but not limited to patented technology, trade secrets, technical expertise, research data, and other confidential information.

135.   Such information possesses independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

136.    Westwin and the Third-Party Defendants misappropriated such information through the improper means of continued use of CVMR's Intellectual Property after the Technology License and Joint Venture Agreement was unilaterally cancelled by Westwin and Long.

137.    Westwin and the Third-Party Defendants also misappropriated CVMR's good will by passing off CVMR's Intellectual Property as their own, and using CVMR's reputation in the industry to gain an economic advantage by potentially confusing investors, suppliers, and customers as to the nature of their relationship.

138.    Terekhov also misappropriated such information through the breach of his settlement agreement with CVMR, which obligates him to maintain CVMR's trade secrets and confidential business information in confidence.

139.    Terekhov also misappropriated CVMR's trade secrets and confidential business information through his breach of the confidentiality clause within his employment agreement.

140.    As a result of Westwin and the Third-Party Defendants' conduct, CVMR is damaged and continues to be damaged in an amount in excess of $75,000 which will be proven at trial.

141.    Westwin and the Third-Party Defendants acted willfully and maliciously, entitling CVMR to royalties, attorney's fees and exemplary damages.

**Eighth Theory of Recovery**
**Misappropriation of Business Information**
**(Against Westwin and All Third-Party Defendants)**

142.    CVMR hereby realleges and incorporates by reference all preceding paragraphs as if fully alleged in this paragraph.

143.    For the purposes of advancing their rival business interest, Westwin and the Third-Party Defendants procured CVMR and Khozan's business information, including business plans, pricing data, customer lists and data, employee lists, supplier lists, and technical processes and know-how.

144.    Westwin and the Third-Party Defendants' procurement of such business information was made through the improper means of their breach of their contractual and common law duties owed to CVMR.

145.    Westwin and the Third-Party Defendants possessed, disclosed, or used CVMR's business information in the furtherance of Westwin's enterprise.

146.    As a result of Westwin and the Third Party Defendants' conduct, CVMR was damaged in an amount in excess of $75,000, which will be proven at trial.

147.    Westwin and the Third Party Defendants acted willfully and maliciously, entitling CVMR to royalties, attorney's fees and exemplary damages.

**Ninth Theory of Recovery**
**Unfair Competition**
**(Against Westwin and All Third-Party Defendants)**

148.    CVMR hereby realleges and incorporates by reference all preceding paragraphs as if fully alleged in this paragraph.

149.    CVMR and Westwin are competitors because they operate in the same business industry.

150.    By engaging in the above-described conduct, Westwin and the Third-Party Defendants unfairly competed with CVMR. Among other things, such conduct included conspiring to take CVMR's metal refining contracts, misappropriating CVMR's business information and trade secrets, soliciting CVMR's client contacts, and recruiting CVMR employees to leave CVMR in order to disrupt CVMR's business activities.

151.    As a result of Westwin and the Third-Party Defendants' conduct, CVMR was damaged in an amount in excess of $75,000, which will be proven at trial.

**Tenth Theory of Recovery**
**Preliminary and Permanent Injunction**
**(Against Westwin and All Third-Party Defendants)**

152.    CVMR hereby realleges and incorporates by reference all preceding paragraphs as if fully alleged in this paragraph.

153.    Westwin and the Third Party Defendants have breached and continue to breach enforceable agreements by violating the Effect of Termination clause in the Technology License and Joint Venture Agreement, and by violating the Confidentiality clause under the Feasibility Study Agreement, because Westwin continued to and continues to use CVMR's Intellectual Property following the termination of the contract. This conduct includes the continued use of CVMR's Intellectual Property.

154.    Westwin and the Third Party Defendants have tortiously interfered and continue to tortiously interfere with CVMR's contracts and business expectations, by

soliciting CVMR employees, suppliers, customers, and clients, as well as disseminating false allegations about CVMR and Khozan designed to harm CVMR and Khozan's business relationships.

155.    Westwin and the Third Party Defendants' actions have caused harm to CVMR and Khozan, for which CVMR and Khozan have a right to relief at trial.

156.    CVMR and Khozan have reason to believe and do in fact believe that Westwin and the Third Party Defendants have violated, and will continue to violate, their contractual, statutory, and common law obligations to CVMR and Khozan. CVMR and Khozan also have reason to believe and do in fact believe that Westwin and the Third Party Defendants are improperly using CVMR's confidential information to the benefit of Westwin and the Third Party Defendants to the disadvantage of CVMR.

157.    Therefore, CVMR and Khozan are entitled to preliminary and permanent injunctive relief, because the full nature and impact of Westwin and the Third Party Defendants' conduct will ultimately have on CVMR and Khozan is difficult, if not impossible, to discern.

158.    CVMR and Khozan have and will continue to be injured by Westwin and the Third Party Defendants' unlawful actions in that CVMR's confidential information, goodwill, competitive advantage, and established business relationships will be jeopardized, lost, or permanently and irreparably damaged should Westwin and the Third Party Defendants be permitted to continue such improper conduct.

## REQUESTED RELIEF

WHEREFORE, Defendants respectfully pray it have and recover judgment against Westwin and the Third Party Defendants and awarding CVMR:

a.   Monetary damages in excess of $75,000 in an amount to be proven at trial;

b.   Punitive and exemplary damages in the maximum amount allowed by law;

c.   Interest on all amounts awarded;

d.   All attorney's fees, expert fees, and costs incurred to prosecute and defend this lawsuit;

e.   The assignment and transfer of right title and interest in the Westwin Refinery Plant and Demonstration Plant; and

f.   Preliminary and permanent injunctive relief against Westwin and the Third Party Defendants enjoining and restraining their persistent and unauthorized use of know-how associated with CVMR's processes.

DATE: March 25, 2025.                     Respectfully submitted,


                                             s/Brandon D. Kemp
                                             Samuel R. Fulkerson, OBA #14370
                                             Brandon D. Kemp, OBA #31611
                                             Vassiliki E. Farrior, OBA #33387
                                             Cameron G. Skinner, OBA #36256
                                           OGLETREE, DEAKINS, NASH, SMOAK
                                           & STEWART, P.C.
                                           621 N. Robinson Ave., Ste. 400
                                           Oklahoma City, OK  73102
                                           Telephone: (405) 546-3760
                                           Facsimile: (405) 546-3775
                                           sam.fulkerson@ogletree.com
                                           brandon.kemp@ogletree.com
                                           viki.farrior@ogletree.com
                                           cameron.skinner@ogletree.com
                                           *Attorneys for Defendants, Counterclaimants, and Third-Party Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2025, I electronically transmitted the foregoing document to the Clerk of Court using the ECF system for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Nicholas ("Nick") V. Merkley, OBA No. 20284
Brooks A. Richardson, OBA No. 18133
Gerard M. D'Emilio, OBA No. 33496
Cole T. McDaniel, OBA No. 35677
GABLEGOTWALS
BOK Park Plaza
499 W. Sheridan Ave., Suite 2200
Oklahoma City, OK 73102
Phone: 405-235-5500
nmerkley@gablelaw.com
brichardson@gablelaw.com
gdemilio@gablelaw.com
cmcdaniel@gablelaw.com
*Attorneys for Plaintiff*

s/Brandon D. Kemp
Brandon D. Kemp

88820780.v9-OGLETREE