## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

WESTWIN ELEMENTS, INC.,

        Plaintiff,

v.

CVMR CORPORATION, KAMRAN
KHOZAN, MICHAEL HARGETT, JOHN
FINLEY, *and* SYDNEY LU,

        Defendants.

_____

CVMR CORPORATION *and* KAMRAN
KHOZAN,

        Counterclaimants and
        Third-Party Plaintiffs,

v.

WESTWIN ELEMENTS, INC.,

        Counter-Defendant,

- and -

KALEIGH LONG *and* DMITRI
TEREKHOV,

        Third-Party Defendants.

Case No. CIV-25-19-D

---

**WESTWIN ELEMENTS, INC., AND KALEIGH LONG'S SUPPLEMENTAL
BRIEF REGARDING APPLICATION OF THE OKLAHOMA CITIZENS
PARTICIPATION ACT IN FEDERAL COURT UNDER THE *ERIE* DOCTRINE**

---

*counsel information on next page*

Nicholas ("Nick") V. Merkley, OBA No. 20284
Brooks A. Richardson, OBA No. 18133
Gerard M. D'Emilio, OBA No. 33496
Cole McDaniel, OBA No. 35677
**GABLEGOTWALS**
BOK Park Plaza
499 West Sheridan Avenue, Suite 2200
Oklahoma City, Oklahoma 73102
Tel (405) 235-5500 | Fax (405) 235-2875
NMerkley@Gablelaw.com
BRichardson@Gablelaw.com
GDEmilio@Gablelaw.com
CMcDaniel@Gablelaw.com

*- and -*

Daniel Card, OBA No. 30034
**GORDON REES SCULLY MANSUKHANI**
3030 NW Expressway, Ste. 300
Oklahoma City, OK 73112
214-813-3441
dcard@grsm.com

***Counsel for Westwin Elements, Inc.,
Kaleigh Long, and Dmitri Terekhov***

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................... i

TABLE OF AUTHORITIES.............................................................................. ii

THE OCPA APPLIES IN FEDERAL COURT AND WARRANTS
DISMISSAL ...................................................................................................... 1

    I.     THE OCPA APPLIES IN FEDERAL COURT. ....................................... 1

        A. Justice Stevens' *Shady Grove* Concurrence Governs the
           Analysis. ...................................................................................... 1

        B. The OCPA Does Not Conflict with the Federal Rules and
           Applies in Federal Court Under *Erie* ....................................... 5

        C. Even if the OCPA Conflicts with the Federal Rules, It Still
           Applies ...................................................................................... 15

    II.    OUT-OF-CIRCUIT DECISIONS DECLINING TO APPLY ANTI-
        SLAPP STATUTES ARE UNPERSUASIVE OR INAPPOSITE. ........................... 16

CONCLUSION ............................................................................................... 19

CERTIFICATE OF SERVICE ........................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

*Abbas v. Foreign Pol'y Grp., LLC*,
    783 F.3d 1328 (D.C. Cir. 2015) ................................................................ 17

*Anagnost v. Tomecek*,
    2017 OK 7, 390 P.3d 707 (quoting 12 O.S. § 1430) ........................... 5, 6, 15, 17

*Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*,
    956 F.3d 1228 (10th Cir. 2020) .................................................................. 6, 16

*Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*,
    2018 WL 4038117 (N.D. Okla. Aug. 23, 2018) ....................................... 6, 7, 8

*Butt v. Bank of Am., N.A.*,
    477 F.3d 1171 (10th Cir. 2007) ...................................................................... 1

*Byrd v. Blue Ridge Rural Elec. Co-op.*,
    356 U.S. 525 (1958) ..................................................................................... 1, 2

*Caranchini v. Peck*,
    355 F. Supp. 3d 1052 (D. Kan. 2018) ................................................... 9, 16, 18

*Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*,
    888 F.3d 455 (10th Cir. 2017) ........................................................................ 1

*CoreCivic, Inc. v. Candide Grp., LLC*,
    46 F.4th 1136 (9th Cir. 2022) ......................................................................... 9

*Craig PC Sales & Serv., LLC v. CDW Gov't, LLC.*,
    2018 WL 4861522 (W.D. Okla. Apr. 30, 2018) ...................................... 15, 16

*Godin v. Schencks*,
    629 F.3d 79 (1st Cir. 2010) .................................................................. *passim*

*Hodara v. Okla. Dep't of*,
    --- P.3d ----, 2025 OK 47 ............................................................................... 5

*James River Ins. Co. v. Rapid Funding, LLC*,
    658 F.3d 1207 (10th Cir. 2011) ...................................................................... 2

*Klocke v. Watson*,
   936 F.3d 240 (5th Cir. 2019) .................................................................. 16, 18

*KLX Energy Servs., LLC v. Magnesium Machine, LLC*,
   521 F. Supp. 3d 1124 (W.D. Okla. 2021) ....................................................... 15

*Krimbill v. Talarico*,
   2018 OK CIV APP 37, 417 P.3d 1240 ........................................................ 7, 16

*Los Lobos Renewable Power, LLC v. Americulture, Inc*,
   885 F.3d 659 (10th Cir. 2018) .......................................................... *passim*

*Moreau v. United States Olympic & Paralympic Committee*,
   641 F. Supp. 3d 1122 (D. Colo. 2022) .......................................... 8, 9, 16, 18

*Racher v. Westlake Nursing Home Ltd. P'ship*,
   871 F.3d 1152 (10th Cir. 2017) ......................................................... *passim*

*Scottsdale Ins. Co. v. Tolliver*,
   636 F.3d 1273 (10th Cir. 2011) ................................................................ 3, 14

*Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010) ........................................................................... *passim*

*Steidley v. Cmty. Newspaper Holdings, Inc.*,
   2016 OK CIV APP 63, 383 P.3d 780 ............................................................... 7

*Terry v. Ely*,
   2020 WL 9074888 (W.D. Okla. Sept. 8, 2020) ............................................. 15

*Trierweiler v. Croxton & Trench Holding Corp.*,
   90 F.3d 1523 (10th Cir. 1996) ................................................................ 4, 14

*Walker v. Armco Steel Corp.*,
   446 U.S. 740 (1980) ....................................................................................... 3

**Statutes**

Oklahoma Citizens Participation Act, 12 O.S. § 1430 *et seq.* ...................................*passim*

Colo. Rev. Stat. § 13-20-1101 ............................................................................. 8

**<u>Rules</u>**

FED. R. CIV. P. 11 ............................................................................................ 14

FED. R. CIV. P. 12 ...................................................................... *passim*

FED. R. CIV. P. 56 ...................................................................... *passim*

FED. R. CIV. P. 23 .............................................................................................. 2

Pursuant to the Court's July 21, 2025, order, Westwin Elements, Inc., and KaLeigh Long (the "Westwin Parties") submit this supplemental brief regarding whether the Oklahoma Citizens Participation Act, 12 O.S. § 1430 *et seq.* (the "OCPA"), applies in federal court under the *Erie* doctrine. For the reasons below, *Erie* dictates the Court must apply the OCPA here—and, applying the OCPA, dismiss the CVMR Parties' abuse of process claim with prejudice. *See* Docs. 25, 33.

**THE OCPA APPLIES IN FEDERAL COURT AND WARRANTS DISMISSAL**

**I.    THE OCPA APPLIES IN FEDERAL COURT.**

**A.  Justice Stevens' *Shady Grove* Concurrence Governs the Analysis.**

In diversity cases like this one, "the district court applies state substantive law—those rights and remedies that bear upon the outcome of the suit—and federal procedural law—the processes or modes for enforcing those substantive rights and remedies." *Los Lobos Renewable Power, LLC v. Americulture, Inc*, 885 F.3d 659, 668 (10th Cir. 2018); *accord Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1162 (10th Cir. 2017). *Erie*'s "overriding consideration" is whether a case's outcome would be "substantially the same . . . if tried in state court." *Los Lobos*, 885 F.3d at 668 (citation omitted); *see Butt v. Bank of Am., N.A.*, 477 F.3d 1171, 1179 (10th Cir. 2007) ("[W]e apply state law with the objective of obtaining the result that would be reached in state court."). Thus, federal courts "must respect the definition of state-created rights and obligations by the state courts"—including "the rules of decision" through which courts adjudicate substantive rights. *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 460 (10th Cir. 2017) (citations omitted) (quoting, *inter alia*, *Byrd v.*

1

*Blue Ridge Rural Elec. Co-op.*, 356 U.S. 525, 535 (1958)); *see id.* (*Erie* requires federal courts to "conform" as much as possible "to state rules even of form and mode where the state rules" bear on "whether the litigation would come out one way in the federal court and another way in the state court if the federal court failed to apply a particular rule." (quoting *Byrd*, 356 U.S. at 536–37)). As explained below, the OCPA is fundamentally substantive, while FED. R. CIV. P. 12 and 56 are procedural.

When a state law allegedly conflicts with a federal rule, this circuit employs the framework set out in Justice Stevens' concurrence in *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co. See* 559 U.S. 393, 416–36 (2010) to decide if the state law applies in federal court. *See Los Lobos*, 885 F.3d at 668 n.3; *Racher*, 871 F.3d at 1162; *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1217 & n.2 (10th Cir. 2011). In *Shady Grove*, the Supreme Court concluded FED. R. CIV. P. 23 barred a state law prohibiting certain types of class actions from applying in federal court. *See id.* at 416–17 (Stevens, J., concurring in part and concurring in the judgment). In his controlling concurrence, Justice Stevens noted that "federal rules cannot displace a State's definition of its own rights or remedies," "must be interpreted" with "sensitivity to important state interests and regulatory policies," and must be "applied . . . against the background of Congress' command that such rules not alter substantive rights," considering "the degree to which the Rule makes the character and result of the federal litigation stray from the course it would follow in state courts.'" *Id.* at 418–19 (citations omitted).

Justice Stevens also recognized that procedural and substantive law can become "so interwoven that rational separation becomes well-nigh impossible." *Id.* at 419 (citations

omitted); *see id.* at 419–20 ("A 'state procedural rule, though undeniably "procedural" in the ordinary sense of the term,' may exist 'to influence substantive outcomes,' and may in some instances become so bound up with the state-created right or remedy that it defines the scope of that substantive right or remedy. ***Such laws, for example, may be seemingly procedural rules that make it significantly more difficult to bring or to prove a claim, thus serving to limit the scope of that claim***." (emphasis added) (citations omitted)). So, "[w]hen a State chooses to use a traditionally procedural vehicle as a means of defining the scope of substantive rights or remedies, ***federal courts must recognize and respect that choice***." *Id.* at 420 (emphasis added).

Based on these principles, Justice Stevens posited a two-part test. *First*, the court must decide if the federal rule is broad enough to control the issue, "thereby leaving no room for the operation" of a state law that seemingly conflicts. *Racher*, 871 F.3d at 1162 (quoting *Shady Grove*, 559 U.S. at 421). While the federal rule is "given [its] plain meaning," *id.* at 1162–63 (citing *Walker v. Armco Steel Corp.*, 446 U.S. 740, 750 n.9 (1980)), it should be "'fairly construed' with 'sensitivity to important state interests and regulatory policies,'" *Shady Grove*, 559 U.S. at 421; *see Racher*, 871 F.3d at 1162 n.2 (courts "avoid[] immoderate interpretations of the Federal Rules that would trench on state prerogatives without serving any countervailing federal interest," so when they decide if a rule "encompasses a particular issues, . . . ***broad reading[s] that would create significant disuniformity between state and federal courts should be avoided if the text permits***." (emphasis added) (citations omitted)); *see also Scottsdale Ins. Co. v. Tolliver*, 636 F.3d 1273, 1276–77 (10th Cir. 2011) (the "'clear case' under *Erie*" is when "enforcing the state

rule would knock out the federal rule," whereas "superficial similarity" does not result in a "direct collision" (citations omitted) (quoting, *inter alia*, *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1540 (10th Cir. 1996))).

"There is a conflict only if there is a 'direct collision' between federal and state law—one that is 'unavoidable.'" *Racher*, 871 F.3d at 1163 (citation omitted). Where the state and federal rules "can exist side by side, . . . each controlling its own intended sphere of coverage,'" no conflict exists. *Id.* (citation omitted). In such situations, the court applies the state rule if it would "discourage[] . . . forum-shopping and avoid[] . . . inequitable administration of the law." *Shady Grove*, 559 U.S. at 417 & n.2, 421 (citations omitted).

*Second*, if a conflict exists, the court must determine if "application of the federal rule 'represents a valid exercise' of the 'rule making authority . . . bestowed . . . by the Rules Enabling Act.'" *Shady Grove*, 559 U.S. at 422 (citation omitted); *see Racher*, 871 F.3d at 1163 (courts assess if "the federal rule is valid" when it conflicts with a state law). The Rules Enabling Act proscribes federal rules from "abridg[ing], enlarg[ing], or modify[ing] *any* substantive right." *Shady Grove*, 559 U.S. at 422 (citation omitted). Though Congress "may have the constitutional power 'to supplant state law' with rules that are 'rationally capable of classification as procedure,'" courts should "***generally presume that it has not done so***." *Id.* (citation omitted) (emphasis added). And "the second step of the inquiry may well bleed back into the first": *i.e.*, if a rule "appears to abridge, enlarge, or modify a substantive right, federal courts must consider whether the rule can reasonably be interpreted to avoid that impermissible result." *Id.* at 422–23; *see id.* at 424–25 (stressing "the separation-of-powers presumption and federal presumption that counsel

against judicially created rules displacing state substantive law" (citations omitted)). "A federal rule, therefore, cannot govern a particular case in which the rule would displace a state law that is . . . so intertwined with a state right or remedy that it functions to define the scope of the state-created right." *Id.* at 423.

### B. The OCPA Does Not Conflict with the Federal Rules and Applies in Federal Court Under *Erie*.

Oklahoma passed the OCPA "to encourage and safeguard the constitutional rights of persons to," *inter alia*, "petition," while "at the same time[] protect the rights of a person to file a meritorious lawsuit for a demonstrable injury." *Anagnost v. Tomecek*, 2017 OK 7, ¶ 8, 390 P.3d 707, 709–10 (quoting 12 O.S. § 1430). The "entire Act is devoted to deterring, preventing[,] and dismissing certain free speech/association/participation type lawsuits as soon as possible after filing." *Id.* ¶ 9. Its main vehicle, a "motion[] to dismiss," "suspend[s]" (and ultimately terminates) a lawsuit unless and "until the [claimant] can establish by clear and specific evidence a prima facie case of each essential element of the claim in question." *Id.* (citing 12 O.S. § 1432). Courts "may allow discovery"; "issue findings as to the purpose [for which] the action was brought"; and "award costs," sanctions[,] and attorney fees to the moving party." *Id.* (citing 12 O.S. §§ 1435–36, 1438).

Critically, the OCPA is "substantive, rather than merely procedural." *Id.* ¶ 16, 390 P.3d at 712. Section 1434 of the OCPA—which sets forth its three-part, burden-shifting framework—"creates a ***new defense*** to causes of action involving first amendment rights, which effectively provides ***immunity from suit*** and would act as a ***complete bar*** to the plaintiff's claim in this cause." *Id.* (emphases added); *see Hodara v. Okla. Dep't of Corrs.*,

--- P.3d ----, 2025 OK 47, ¶¶ 16–17 (the OCPA is "clearly substantive in nature" and "literally bar[s] causes of action [that are] based on, relate[] to, or respond[] to a party's exercise of First Amendment rights"); *see also Anagnost*, ¶¶ 16–17, 390 P.3d at 712–13 (concluding the OCPA "affects" and "enlarge[s]" substantive rights by "employ[ing] a special motion to dismiss with expedited trial court and appellate review and [a] stay of discovery" and authorizing damages in the form of fees, costs, expenses, and sanctions— all of which "benefit[ defendants] . . . by reducing the time commitment and financial resources to combat the lawsuits" and "lessening the chill effect on petitioning activity").

Courts in- and outside this Circuit have held the OCPA and similar anti-SLAPP statutes apply in federal court under *Erie*. In *Barnett*, the Northern District of Oklahoma held the OCPA (a) did not conflict with Federal Rules 12 and 56 and (b) must be applied in federal court. *Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, No. 18-CV-00064-TCK-FHM, 2018 WL 4038117, at *4 (N.D. Okla. Aug. 23, 2018), *aff'd in part, rev'd in part, and remanded*, 956 F.3d 1228 (10th Cir. 2020).[1]

The court's analysis proceeded in four parts. *First*, the court found the Tenth Circuit's *Los Lobos* decision did not control whether the OCPA applies in federal court. The *Los Lobos* panel "distinguish[ed]" New Mexico's law from others—like the OCPA— "that shift substantive burdens of proof, or alter substantive standards." *Barnett*, 2018 WL 4038117, at *3 (quoting *Los Lobos*, 885 F.3d at 670). While New Mexico courts

---

[1] While the district court's order was reversed on alternate grounds, *see* 956 F.3d at 1238–39 (remanding with instructions to decline supplemental jurisdiction), its reasoning regarding the OCPA remains persuasive.

characterize the state's anti-SLAPP statute as procedural, Oklahoma courts recognize "that the OCPA create[s] a new defense to causes of action involving First Amendment rights," "indicat[ing] that the OCPA is not merely procedural." *Id.* (citing *Steidley v. Cmty. Newspaper Holdings, Inc.*, 2016 OK CIV APP 63, 383 P.3d 780, 785–87); *cf. Los Lobos*, 885 F.3d at 670 (noting New Mexico's Supreme Court held its "Anti-SLAPP statute provides . . . *procedural* protections," but "the *Noerr-Pennington* doctrine [*i.e.*, Petition Clause immunity] is the mechanism that offers . . . *substantive* First Amendment protections" (citation omitted)).

*Second*, the court found no "direct collision" between the OCPA and the Federal Rules. *Barnett*, 2018 WL 4038117, at *3–4. "Unlike the Rules, the OCPA is a statement of" Oklahoma's "substantive policy." *Id.* at *4. Rules 12 and 56 "provide mechanisms for dismissal of a claim prior to trial," but "do not provide any policy goals, nor any burden shifting and changes to substantive standards to enact these goals." *Id.* Moreover, no conflict existed because "a motion to dismiss under the OCPA will not interfere with the operation of Rules 8, 12, or 56," which "look to different questions than the OCPA and have different evidentiary requirements." *Id.*; *see id.* at *2 (while the OCPA's burden shifting standards exceed state and federal pleading standards, they "do[] not . . . impose a higher burden of proof than that required of the plaintiff at trial and allow[] the plaintiff to use circumstantial evidence"); *see also Krimbill v. Talarico*, 2018 OK CIV APP 37, ¶¶ 16–17, 417 P.3d 1240, 1246. If a claimant survives an OCPA motion, the defendant "may, without redundancy or conflict, make motions under Rules 8, 12, and 56." *Barnett*, 2018 WL 4038117, at *4. Thus, the OCPA and the Federal Rules can "exist side by side, each

controlling its own intended sphere of coverage without conflict." *Id.* (citation omitted).

*Third*, applying the OCPA would likely be outcome determinative based on its burden-shifting framework, which requires a claimant to "show a *prima facie* case 'by clear and specific evidence'" and "alters the substantive standards of a traditional motion to dismiss." *Id.* "[B]urdens of proof," along with substantive standards, "are outcome determinative in a civil action, as placing the burden on the wrong party generally constitutes reversible error." *Id.* (collecting cases). *Fourth*, no overriding federal interest precludes applying the OCPA, and *Erie*'s twin aims—"discouragement of forum-shopping and avoidance of inequitable administration of the laws"—"do not justify applying federal law." *Id.* If anti-SLAPP statutes did not apply in federal court, "litigant[s] interested in bringing . . . meritless SLAPP claim[s] would have significant incentive to shop for a federal forum." *Id.* Likewise, "it would be inequitable to disadvantage a litigant for being in a federal court, if that litigant was otherwise entitled to the substantive protections of an anti-SLAPP statute." *Id.*

*Barnett* accords with other decisions in this circuit. The District of Colorado has held that Colorado's anti-SLAPP statute applies under *Erie*. *See Moreau v. United States Olympic & Paralympic Committee*, 641 F. Supp. 3d 1122, 1128 (D. Colo. 2022); *see id.* at 1128 (noting Colorado's anti-SLAPP statute "tracks California's . . . statute almost exactly" (citation omitted)); *see also generally* Colo. Rev. Stat. § 13-20-1101 (anti-SLAPP statute that, like the OCPA, includes burden shifting and fee provisions).

The court rejected the claimant's argument that the Federal Rules "are the 'sole available methods' for [pretrial] relief," and that Colorado's statute is a conflicting state

rule of procedure. *Moreau*, 641 F. Supp. 3d at 1127–28. California federal courts, "including the Ninth Circuit," have determined not only "that California's anti-SLAPP law applies in federal court," but also that *Shady Grove* does not undermine those determinations. *Id.* at 1129 (collecting cases) (citing, *inter alia*, *CoreCivic, Inc. v. Candide Grp., LLC*, 46 F.4th 1136 (9th Cir. 2022)). Under the Ninth and Tenth Circuit's shared "framework for assessing potential procedural conflicts between state and federal rules," Colorado's anti-SLAPP statute "passed muster and applied in federal court." *Id.* at 1130.[2]

Like *Moreau*, the District of Kansas applied its forum state's anti-SLAPP statute. *See Caranchini v. Peck*, 355 F. Supp. 3d 1052 (D. Kan. 2018); *see id.* at 1055–56 (describing the statute, which is like the OCPA and has a burden-shifting scheme). Reviewing decisions from other circuits, the court was "persuaded by the First Circuit's . . . detailed analysis" of Maine's similar anti-SLAPP statute, "particularly in regard to the practical effects of not applying the Act in federal court." *Id.* at 1060 (discussing *Godin v. Schencks*, 629 F.3d 79 (1st Cir. 2010)). Kansas's anti-SLAPP statute "promulgate[s] additional rules for parties bringing [First Amendment-based] lawsuits"—including that "both parties . . . meet, essentially, heightened pleading standards." *Id.* Were federal courts to decline to apply the statute, they "would be ignoring the Kansas Legislature's desire to protect individuals against . . . lawsuits that infringe on First Amendment rights." *Id.*

Further, "declin[ing] to apply the Act . . . would encourage forum shopping and

---

[2] Like *Barnett*, *Moreau* did not rely on *Los Lobos* because New Mexico's anti-SLAPP statute is "meaningfully different" than Colorado's. *See Moreau*, 641 F. Supp. 3d at 1129 n.3 (highlighting the Colorado statute's "burden-shifting framework" as distinguishing).

would result in inequitable application of the law, the two goals of the *Erie* doctrine." *Id.* If the statute did not apply, "[a] plaintiff could, and would, choose to file her . . . suit in federal court . . . in order to avoid the heightened standards set forth by the Act," leaving defendants with "only . . . the traditional means provided by the Federal Rules . . . to dismiss the case—even if it truly was an infringement on First Amendment rights." *Id.* Thus, the federal court would be applying Kansas substantive law "without the additional protections the Kansas legislature chose to enact." *Id.* Kansas's anti-SLAPP statute therefore applied because it "influence[s] substantive outcomes"; "is so bound up with the state-created right or remedy that it defines the scope of that . . . right or remedy"; and "does not substitute," but "merely supplements," Rules 12 and 56 "for a narrow category of cases." *Id.*

Out of circuit, the First Circuit applied Maine's anti-SLAPP statute[3] under *Erie*, concluding that "neither [Rule] 12(b)(6) nor [Rule] 56, on a straightforward reading of [their] language, w[ere] meant to control the particular issues under [Maine's statute]." *Godin*, 629 F.3d at 86. Rules 12 and 56 "are not so broad as to cover the issues within the scope" of the anti-SLAPP statute and neither "attempt[] to answer the same question" nor "address the same subject" as the statute. *Id.* at 88 (alteration in original) (citations omitted). The statute "on its face is not addressed to [Rule 12's or Rule 56's] procedures"— it "is only addressed to special procedures for state claims based on a defendant's petitioning activity." *Id.* at 88 Thus, *contra Shady Grove*, the anti-SLAPP statute "does not

---

[3] That statute established a "special motion to dismiss," which would be granted "unless the [non-movant] show[ed] that the moving party's exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law and that the moving party's acts caused actual injury to the [non-movant]." *Godin*, 629 F.3d at 82.

seek to displace the Federal Rules or have Rules 12(b)(6) or 56 cease to function." *Id.*; *see id.* at 89 n.16 (finding unpersuasive the argument that Maine's statute and Rules 12 and 56 could not co-exist because it rested on "an [inappropriately] abstracted framing of [the Rules'] breadth").

Rules 12 and 56 "are addressed to different (but related) subject-matters" and provide "general federal procedures governing all categories of cases." *Id.* Rule 12 "test[s] the sufficiency of the complaint"—whereas the anti-SLAPP statute "provides a mechanism . . . to dismiss a claim on an entirely different basis: that the claims in question rest on the defendant's protected petitioning conduct and that the plaintiff cannot meet the specific rules Maine has created to protect such petitioning activity against lawsuits." *Id.* at 89. And Rule 56 "creates a process for parties to secure judgment before trial on the basis that there are no disputed material issues of fact"—whereas Maine's statute "serves the entirely distinct function of protecting those specific defendants that have been targeted with litigation on the basis of their protected speech." *Id.* The fact Maine itself has equivalent "general procedural rules" "supports the view that Maine has not created a substitute to the Federal Rules, but instead created a ***supplemental and substantive rule*** to provide added protections, beyond those in Rules 12 and 56, to defendants who are named as parties because of constitutional petitioning activities." *Id.* (emphasis added).

Further, the anti-SLAPP statute "has both substantive and procedural aspects." *See id.* at 89. On the substantive end, the statute—like the OCPA—"shifts the burden to [the claimant] to defeat the special motion" and further delineates that burden's scope. *Id.* Conversely, Rules 12 and 56 do not "determine[] which party bears the burden of proof on

a state-law created cause of action." *Id.* (noting it is "long settled that the allocation of burden of proof is substantive in nature and controlled by state law"). The statute also "provides substantive legal defenses to defendants and alters what plaintiffs must prove to prevail"—while "[n]either Rule 12 or 56 . . . supply substantive defenses or the elements of plaintiffs' proof to causes of action, either state or federal." *Id.*

Finally, *Erie* policy counseled in favor of applying the anti-SLAPP statute in federal court. *See id.* at 91–92. "Plainly," the statute "substantively alters Maine-law claims that are based on a defendant's protected petitioning activity by shifting the burden to the plaintiff and altering the showing the plaintiff must make." *Id.* at 91. The statute also authorized attorney fees for prevailing movants. *Id.* "Declining to apply [the statute] in federal court," then, would "result in an inequitable administration of justice between a defense asserted in state court and the same defense asserted in federal court." *Id.* at 92. "Likewise," "the incentives for forum shopping would be strong" if the statute were not applied: "electing to bring state-law claims in federal as opposed to state court would allow a plaintiff to," *inter alia*, "avoid [the statute's] burden-shifting framework . . . and circumvent any liability for a defendant's attorney's fees or costs." *Id.*

For all these reasons, the circuit found the state statute "so intertwined with a state right or remedy that it functions to define the scope of the state-created right," and so "[could not] be displaced by Rule 12(b)(6) or Rule 56." *Id.* (citation omitted) (observing that, if these Rules "were thought to preempt application of [the statute], a serious question might be raised under the Rules Enabling Act"). Nor was there any indication that the Rules "were intended to 'occupy the field' with respect to pretrial procedures aimed at weeding

out meritless claims.'" *Id.* at 91 (citation omitted). Thus, "Rules 12 and 56 'c[ould] exist side by side" with [Maine's anti-SLAPP statute], 'each controlling its own intended sphere of coverage without conflict.'" *Id.* (citation omitted).

*Barnett*, *Moreau*, *Caranchini*, and *Godin*—not to mention Justice Stevens' *Shady Grove* concurrence itself—all show that the OCPA is a substantive provision of state law and applies in federal court under *Erie.* There is no "direct conflict" between the OCPA and Rules 12 and 56 (or, put differently, the Rules are not "sufficiently broad" to control the issue targeted by the OCPA). The OCPA and the Federal Rules answer different questions. *Cf. Shady Grove*, 559 U.S. at 418–19; *Racher*, 871 F.3d at 1162 n.2. Whereas the former is designed to protect a defendant's substantive, petitioning rights without being burdened by retaliatory lawsuits, the latter are merely procedural rules governing case progression and resolution. *Cf. Racher*, 871 F.3d at 1164 (state laws are substantive when they "intimately affect[] recovery or non-recovery" (citation omitted)).

The Rules do not shift burdens of proof, alter legal standards, or authorize new categories of damages for a subset of claims. But the OCPA does all these things—while "limit[ing] the scope" of certain claims (based on, *inter alia*, petitioning conduct) by making them "more difficult to bring or to prove." *Shady Grove*, 559 U.S. at 419–20. At the same time, like the statute in *Godin*, the OCPA exists alongside 12 O.S. §§ 2012 and 2056—analogues to Federal Rules 12 and 56—a fact "support[ing] the view" that the OCPA does not "knock out" the Federal Rules, but merely "supplement[s]" them with "added protections" for particular claims. *See Godin*, 629 F.3d at 89. Moreover, as the cited cases show, nothing about the OCPA precludes reliance on either Rule 12 or Rule 56, and

13

the Federal Rules broadly lack any indication they were meant to "occupy the field" and bar other mechanisms for narrowing a case before trial. Any overlap between the OCPA and the Rules, then, is purely superficial, *see Tolliver*, 636 F.3d at 1276–77, and does not warrant declining to apply the OCPA in federal court. *Cf. Trierweiler*, 90 F.3d at 1539–41 (holding a Colorado certification statute applied in federal court, even though it was similar to FED. R. CIV. P. 11, because there was "no 'direct collision' between the two," as the state statute "protect[ed] a particular class of defendants" and "expedit[ed] such cases," and therefore "vindicate[d] substantive interests of Colorado not covered by Rule 11").

Beyond the question of the Rules' scope, *Erie* policy also strongly favors applying the OCPA here. Declining to apply the OCPA would unquestionably turbocharge forum shopping: claimants seeking to file retaliatory lawsuits against individuals exercising their constitutional rights would flock to federal court, knowing they could avoid Oklahoma's heightened burdens for advancing First Amendment-based tort actions. And concomitantly, such forum-specific application would result in inequitable administration of the laws, as claimants in federal court could potentially carry retaliatory tort actions through the significant costs of civil discovery—really, a central reason for bringing such retaliatory actions in the first place—all the way to jury trial, while state court claimants might have been thrown out months, if not years, prior. Radically different outcomes like these are precisely what *Erie* is designed to avoid.

Given the OCPA does not conflict with the Federal Rules, and *Erie*'s goals strongly favor enforcing state law here, the Court should apply the OCPA to the CVMR Parties' abuse of process claim—and dismiss it with prejudice.

### C. Even if the OCPA Conflicts with the Federal Rules, It Still Applies.

To the extent the Court determines the OCPA conflicts with FED. R. CIV. P. 12 and 56, it should still apply the OCPA pursuant to Judge Friot's persuasive and thorough reasoning in *Craig PC Sales & Serv., LLC v. CDW Gov't, LLC*. *See* No. CIV-17-003-F, 2018 WL 4861522, at *10–15 (W.D. Okla. Apr. 30, 2018); *see also KLX Energy Servs., LLC v. Magnesium Machine, LLC*, 521 F. Supp. 3d 1124, 1130–31 (W.D. Okla. 2021) (reaffirming *Craig* analysis); *Terry v. Ely*, No. 19-CV-00990-PRW, 2020 WL 9074888, at *5 (W.D. Okla. Sept. 8, 2020) (Wyrick, J.) (adopting *Craig*'s reasoning).

After finding the OCPA conflicted with Rule 12 and 56, *see Craig*, 2018 WL 4861522, at *13–15, Judge Friot "[f]ollow[ed] Justice Stevens' analysis" and concluded that applying Rules 12 and 56 rather than the OCPA would "abridge or modify the substantive rights of the [OCPA's] newly created defense, 'immunity from suit,' and the requirement of fee shifting." *Id.* at *15 (quoting *Anagnost*, ¶ 16, 390 P.3d at 712). The OCPA's burden-shifting framework "makes it 'significantly more difficult to bring [certain] claim[s], thus serving to limit the scope of that claim[s].'" *Id.* (citation omitted). As well, the OCPA authorizes new "damages" in the form of "fees, costs[,] . . . reasonable expenses," and "sanctions." *Id.* (citation omitted). Thus, because applying Rules 12 and Rule 56 was "[in]consistent[] with the Rules Enabling Act and Justice Steven's concurring opinion," Judge Friot applied the OCPA to the claims at issue. *Id.*

As explained above, the OCPA does not conflict with the Federal Rules. Regardless, the Court should still apply the OCPA under Judge Friot's logic in *Craig*. *Cf. Shady Grove*, 559 U.S. at 422–23 (the framework's second step "bleed[s] back" into its first because

15

"federal courts **must** consider whether [a federal] rule can reasonably be interpreted to avoid" abridging, enlarging, or modifying substantive rights (emphasis added)).

## II.    OUT-OF-CIRCUIT DECISIONS DECLINING TO APPLY ANTI-SLAPP STATUTES ARE UNPERSUASIVE OR INAPPOSITE.

No Tenth Circuit precedent exists deciding whether the OCPA applies in federal court. *Los Lobos*, as shown above, deals with a materially different, purely procedural New Mexico statute. *See* 885 F.3d at 673. Moreover, its *dicta* supports applying the OCPA. *Cf. id.* at 670; *Moreau*, 641 F. Supp. 3d at 1129; *Caranchini*, 355 F. Supp. 3d at 1061. Thus, if *Los Lobos* is relevant at all, it bolsters the case for applying the OCPA. Beyond *Los Lobos*, the Circuit discussed the OCPA in *dicta* in *Barnett*, but ultimately "[did] not decide th[e] issue" of its applicability. *See* 956 F.3d at 1237–38. The *Barnett* panel raised the possibility that "in practice" the OCPA and the Federal Rules do not differ "because the same analysis [might] be used for both application of the OCPA dismissal standards and the Federal Rules for dismissal for failure to state a claim and summary judgment." *Id.* at 1237–38 & n.4; *cf. Krimbill*, ¶¶ 20–21, 24, 32, 417 P.3d at 1247–49. This aside in *Barnett*, though, provides little, if any, guidance to district courts. *Cf. Moreau*, 641 F. Supp. 3d at 1131 (discussing *Barnett*'s limited utility).

Outside the circuit, the leading decisions declining to apply anti-SLAPP statutes in federal court issued from the Fifth and D.C. Circuits. *See Klocke v. Watson*, 936 F.3d 240 (5th Cir. 2019); *Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328 (D.C. Cir. 2015). But neither *Abbas* nor *Klocke* controls or is persuasive.

In *Abbas*, the D.C. Circuit held that "federal court[s] must apply" Federal Rules 12

16

and 56 "instead of the [Washington] D.C. Anti-SLAPP Act[.]" 783 F.3d at 1333. The circuit noted that, "[f]or the category of cases that it covers, the D.C. Anti-SLAPP Act establishes the circumstances under which a court must dismiss a plaintiff's claim before trial—namely, when the court concludes that the plaintiff does not have a likelihood of success on the merits." *Id.* But Rules 12 and 56 answer the same question differently, as "[t]hey do not require a plaintiff to show a likelihood of success on the merits." *Id.* at 1333–34. On the circuit's reading, "a plaintiff is ***generally*** entitled to trial if he or she meets the Rule 12 and 56 standards to overcome a motion to dismiss or for summary judgment"—an entitlement that the D.C. statute "nullifies." *Id.* (emphasis added). Thus, the D.C. statute "conflicts with the Federal Rules by setting up an additional hurdle a plaintiff must jump over to get to trial." *Id.*

*Abbas*'s most glaring difference with Tenth Circuit caselaw is that it ***does not*** apply Justice Stevens' *Shady Grove* concurrence. *See* 783 F.3d at 1333 n.1, 1336–37 (holding that no opinion in *Shady Grove* controls under the *Marks* rule). As a result, *Abbas* elides any meaningful discussion of the Federal Rules' scope. *Cf. Godin*, 629 F.3d at 89 n.16 ("abstracted framing of the breadth of the Federal Rules" unhelpful). Further, while the D.C. statute "establishe[d] a new 'procedural mechanism' for dismissing certain cases before trial," *id.* at 1335, the OCPA contains substantive features and codifies a new immunity from suit, *Anagnost*, ¶ 16, 390 P.3d at 712. Moreover, *Abbas*'s reasoning (which is sparse) does not account for the effect a statute like the OCPA has on claims based on petitioning conduct. That is, the OCPA makes it "more difficult" to bring such claims, and in doing so is fundamentally substantive in a way "federal courts must recognize and

respect." *Shady Grove*, 559 U.S. at 420–21. *Abbas* relies on precisely the type of "broad reading[s]" of federal rules "creat[ing] significant disuniformity between state and federal courts" the Tenth Circuit has cautioned against. *See Racher*, 871 F.3d at 1162 n.2. For these reasons, courts in this circuit have found *Abbas* unavailing. *See Moreau*, 641 F. Supp. 3d at 1131–32; *Caranchini*, 355 F. Supp. 3d at 1060–61.

Klocke is as unpersuasive. Relying heavily on *Abbas*, the Fifth Circuit declined to apply the Texas Citizens Participation Act in federal court because it conflicted with Rules 12 and 56. *See* 936 F.3d at 245. The circuit read *Shady Grove* and *Abbas* as "hold[ing] that a state rule conflicts with a federal procedural rule when it imposes additional procedural requirements not found in the federal rules"—a "reading" that does not describe Justice Stevens' concurrence. The circuit conceded that "nothing about the TCPA suggests that a party could not file a Rule 12 or 56 motion in federal court alongside a TCPA motion to dismiss." *Id.* at 246. Similarly, the TCPA (like the OCPA) "does not abrogate or lessen any other defense, remedy, immunity, or privilege available under other constitutional, statutory, case, or common law or rule provisions." *Id.* at 246–47 (citation omitted). But the circuit brushed past these observations, articulating the test for conflicts not as "whether it is logically possible for a court to comply with the requirements of both," but as "whether the Federal Rules in question are 'sufficiently broad to control the issue before the court.'" *Id.* at 247 (citation omitted). *But cf. Shady Grove*, 559 U.S. at 418–21.

Klocke is unconvincing for the same reasons *Abbas* is: it defines the scope of the Federal Rules too vaguely and capaciously, and then proceeds to conclude Texas' anti-SLAPP statute impermissibly conflicts with Rules 12 and 56, with no "sensitivity to" the

"state interests" codified in the TCPA or consideration of "Congress' command that [federal] rules not alter substantive rights" and "the degree to which the [federal rules] make[] the character and result of the federal litigation stray from the course it would follow in state courts." *Shady Grove*, 559 U.S. at 418–19 (citations omitted). Irrespective of the TCPA's similarly to the OCPA, *Klocke* lacks adequate reasoning or logic to constitute persuasive, out-of-circuit authority—particularly in the face of more persuasive out-of-circuit cases like *Godin*, not to mention **in-circuit** decisions like *Moreau, Caranchini*, *Barnett*, and *Craig*.

## CONCLUSION

The CVMR Parties' abuse of process claim attacks the Westwin Parties for petitioning conduct. In Oklahoma state court, such a claim would not survive an OCPA dismissal motion. The caselaw cited above, *see* Section I, *supra*, along with *Erie*'s bedrock policy, dictate the same result should occur here. Accordingly, the Court should apply the OCPA and dismiss the CVMR Parties' abuse of process claim with prejudice. *See* Docs. 25, 33.

Dated: August 11, 2025

Respectfully submitted,

/s/ *Gerard M. D'Emilio*

Nicholas ("Nick") V. Merkley, OBA No. 20284
Brooks A. Richardson, OBA No. 18133
Gerard D'Emilio, OBA No. 33496
Cole McDaniel, OBA No. 35677
**GABLEGOTWALS**
BOK Park Plaza
499 West Sheridan Avenue, Suite 2200
Oklahoma City, Oklahoma 73102
Tel (405) 235-5500 | Fax (405) 235-2875
Email: NMerkley@Gablelaw.com
BRichardson@Gablelaw.com
GDEmilio@Gablelaw.com
CMcDaniel@Gablelaw.com

*- and -*

Daniel Card, OBA No. 30034
**GORDON REES SCULLY MANSUKHANI**
3030 NW Expressway, Ste. 300
Oklahoma City, OK 73112
214-813-3441
dcard@grsm.com

***Counsel for Westwin Elements, Inc.,
Kaleigh Long, and Dmitri Terekhov***

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2025, I electronically transmitted the attached document to the Clerk of Court using the Electronic Case Filing System for filing. Based on the records currently on file in this case, the Clerk of the Court will transmit a Notice of Electric Filing to those registered participants of the ECF System.

/s/ *Gerard M. D'Emilio*
Gerard M. D'Emilio